RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE    9   26   06
BY           DM

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

UNITED STATES OF AMERICA

versus

EMANUEL WILSON

CRIMINAL NO. 03-50115-01
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is Emanuel Wilson's ("Wilson") "Independent Bill In Equity For Relief From Judgment." See Record Document 63. Based on the following, Wilson's motion is **DENIED**.

## I. BACKGROUND

In February 2003, the Shreveport Police Department received information from a confidential informant that Wilson was selling crack cocaine in the Shreveport, Louisiana area. On March 11, 2003, the defendant and his live-in girlfriend, Cynthia Edmond ("Edmond"), sold 119 net grams of crack cocaine to a cooperating witness for $3,000.00.

When questioned after the sale, Wilson told Agent Randy Benton ("Agent Benton") of the Shreveport Police Department Drug Enforcement Administration Task

Force that he usually sold "Big 8's," packages which contain four and one-half ounces of crack cocaine. Edmond told Agent Benton that she was with Wilson fifteen to twenty times in the past year when Wilson sold "Big 8's."

On October 22, 2003, a grand jury returned a two-count indictment against both Wilson and Edmond. Count One charged them with conspiracy to distribute fifty grams or more of a mixture and substance containing a detectable amount of cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 841(a)(1) and 846. See Record Document 1. Count Two charged them with distributing and aiding and abetting the distribution of fifty grams or more of a mixture and substance containing a detectable amount of cocaine base (crack cocaine) in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). See id.

Wilson pleaded guilty to Count One of the indictment pursuant to a plea agreement. The presentence investigation report estimated that Wilson had engaged in a minimum of twenty sales, each of at least four and one-half ounces of crack cocaine. At the sentencing hearing, Wilson objected to the use in the presentence report of statements made by his co-defendant, and argued he should only be responsible for the drugs he sold to the confidential informant. After hearing testimony, this court found that Wilson had sold four and one-half ounce packages of crack cocaine on fifteen occasions and determined his sentence accordingly under the

Sentencing Guidelines ("Guidelines"). Wilson was sentenced to 210 months imprisonment followed by a five year term of supervised release.

He appealed to the Fifth Circuit Court of Appeals, which affirmed both his conviction and sentence. See Record Document 55. Wilson also petitioned the United States Supreme Court for a writ of certiorari but his petition was denied. See Record Document 58. He then filed the instant motion. See Record Document 63.

## II. LAW AND ANALYSIS

Wilson alleges in his "Independent Bill In Equity For Relief From Judgment" that the crack cocaine he was sentenced for distributing did not exist, making it impossible for him to have committed the crime of distributing the drug. See Record Document 63. He bases this claim on the fact that the crack cocaine was never introduced into evidence. See id. He asserts that it is an injustice for him to be serving time for a crime that it was impossible for him to have committed, and that the court should therefore exercise "equity jurisdiction" and immediately release him from imprisonment. Id.

### A. Jurisdiction.

Wilson claims that this court has "equity jurisdiction" to set aside his sentence. He cites 28 U.S.C. § 132; U.S. Const. art. III, cl. 2; and the Judiciary Act of 1789 (1 Stat 73), all for the proposition that this court can provide equitable relief from the

judgment against him and release him from his "illegal incarceration." Id. Wilson also states that "[t]he fact that there may be no precedent for the precise relief sought is not fatal to equity jurisdiction since precedent is only a guide and not a bar." Id.

None of the general declarations Wilson cites provide jurisdiction for the court to hear this case "in equity," as Wilson alleges. Wilson gives no other authority and cites no prior case where a federal district court has exercised jurisdiction on this basis to release a prisoner from his sentence. This court will not adopt Wilson's assertions absent sufficient authority.

Wilson cites U.S v. Morgan, 346 U.S. 502, 511, 74 S. Ct. 247 (1954), for the principle that an "equitable remedy cannot be denied as a matter of law." In Morgan, a former prisoner sought a writ of error *coram nobis* for relief from a conviction after completing his sentence.[1] See id. However, the Fifth Circuit has noted that the writ of *coram nobis* is an "extraordinary remedy available to a petitioner *no longer in custody* who seeks to vacate his criminal conviction." United States v. Hatten, 167 F.3d 884, 887 (5th Cir. 1999) (emphasis added). In Hatten, because the petitioner was in custody when he filed the motion, the court found that the writ of *coram nobis*

---

[1] The writ of *coram nobis* is an extraordinary remedy available in "circumstances where the petitioner can demonstrate civil disabilities as a consequence of the criminal conviction, and that the challenged error is of sufficient magnitude to justify the extraordinary relief." Jimenez v. Trominski, 91 F.3d 767, 768 (5th Cir. 1996).

4

was not available to him. See id. Accordingly, as Wilson is still in custody, this court finds that the writ of *coram nobis* is equally unavailable to him. Therefore, the Supreme Court's statements in Morgan referring to the writ of *coram nobis* do not apply to his petition.

In addressing another remedy in equity, the Fifth Circuit has held that "*audita querela* is not available to vacate an otherwise final criminal conviction on purely equitable grounds."[2] United States v. Reyes, 945 F.2d 862, 866 (5th Cir. 1991). Wilson has already exhausted the appeals process, therefore his criminal conviction is otherwise final, and *audita querela* is not available to vacate his conviction. The Fifth Circuit also stated in Reyes that *audita querela* added little to the "current scheme of post conviction relief afforded by section 2255 and [the] writ of coram nobis." Id. This statement suggests that section 2255 and a writ of *coram nobis* are the primary remedies available under the "current scheme of post conviction relief."

In United States v. Early, 27 F.3d 140, 142 (5th Cir. 1994), the Fifth Circuit stated that if a petitioner files a meaningless, unauthorized motion, the district court should deny the motion for lack of jurisdiction. Wilson does not cite any authorization for this petition. He has not cited a single case where a court has

---

[2] "The writ of *audita querela* permits a petitioner to obtain relief against a judgment based on some legal defense arising after the judgment." Jiminez at 768.

5

exercised jurisdiction "in equity" to overturn a criminal conviction or vacate a sentence through an "Independent Bill In Equity For Relief From Judgment." Accordingly this court is without jurisdiction to act.

As discussed above, Wilson cannot seek relief under the recognized uses of equity jurisdiction. The writ of *coram nobis* is not available because he is still in custody, and *audita querela* is not available to vacate an otherwise final criminal conviction. Wilson has identified no other way for the court to exercise jurisdiction over his claims. As a matter of caution, the court will address this petition as if it were filed under section 2255.

**B.   28 U.S.C. § 2255.**

Not every claim can be brought under section 2255. "Challenging a conviction and sentence with a section 2255 motion is fundamentally different from a direct appeal." United States v. Samuels, 59 F.3d 526, 528 (5th Cir. 1995). The Fifth Circuit has held:

> Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Non-constitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.

United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (citations omitted). Wilson "may not raise an issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for [his] procedural default, and 'actual prejudice' resulting from the error." United States v. Shaid, 937 F.2d 228, 232 (5th Cir. 1991) (citation omitted).

To establish "cause," Wilson must show that some external impediment prevented him from raising the claims on direct appeal. See United States v. Flores, 981 F.2d 231, 235 (5th Cir. 1993). In order to meet the "actual prejudice" test, Wilson must demonstrate substantial prejudice, such that the integrity of the entire proceeding was infected. See Shaid, 937 F.2d at 233. Further, Wilson may not raise any non-constitutional errors in his section 2255 motion unless he establishes that "the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice." Id. at 232 (citation omitted).

Wilson has neglected to show cause for his failure to argue these issues on direct appeal or actual prejudice resulting from his error. Moreover, he has not established that the alleged errors would result in a complete miscarriage of justice, as he has failed to prove his actual innocence. See Flores, 981 F.2d at 236 (stating that without a colorable showing of factual innocence, a defendant fails to show a

7

fundamental miscarriage of justice). However, in an abundance of caution, the court will proceed to the merits of his claims.

1.  **Existence of the Crack Cocaine.**

Wilson alleges that the crack cocaine he was convicted for distributing did not exist, and it was therefore impossible for him to distribute the drug. See Record Document 63. He claims that he repeatedly protested throughout the action against him that "he had no drugs." Id. Wilson accuses the government of employing a "'legal fiction' in the form of crack cocaine that did not exist to convict [him] in an at-law proceeding." Id. He cites several Latin phrases which he refers to as "maxims of law" as support for an "equitable remedy." Id. Each of these assertions is based upon Wilson's contention that it was impossible for him to commit the crime of distribution of crack cocaine because the crack cocaine did not exist.

Contrary to Wilson's allegations, neither the guilty plea transcript nor the sentencing transcript show that he claimed at any time "that he had no drugs." Wilson stated under oath during the guilty plea proceeding that he fully understood the charge against him and that it involved fifty grams or more of crack cocaine. See Guilty Plea Transcript at 4. He affirmed that he knew he had the right to plead not guilty and have the matter submitted to a jury. See id. at 5 and 6. Wilson denied that

8

anyone had used undue persuasion to cause him to plead guilty. See id. at 7. He said that he was pleading guilty because he was in fact guilty, and that he understood that the maximum punishment was a term not less than ten years and not more than life. See id. at 8 and 9. Wilson told the court that he had a clear head and a full understanding of the charges against him, and that his attorney had been available to answer his questions and advise him. See id. at 4. He also said that he was satisfied with the legal advice she gave him. See id. Wilson agreed that he understood a presentence report would be prepared and that the report would be used to determine the length of his sentence. See id. at 12. He also stated that he understood that it was the amount of narcotics with which he was involved that would determine the appropriate sentence under the Guidelines and that a government witness would testify on the subject. See id. at 16.

After the government witness testified about the crack cocaine, Wilson said that he understood that he could exercise his right to a trial by jury and the government would be required to prove how much of the substance Wilson distributed and prove that the substance was crack cocaine. See id. at 22. Wilson also agreed that if he chose to go to trial, the government could in fact prove that 119.8 grams of crack cocaine were involved in the crime for which he was convicted. See id.

The United States Supreme Court has found that "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." United States v. Broce, 488 U.S. 563, 109 S. Ct. 757, 762 (1989). Once the guilty plea is final, if the offender seeks to reopen the proceeding, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." Id. The Court also stated that a guilty plea is not just a confession that the accused did the acts, but is also an "admission that the accused committed the crime charged against him." Id.

Wilson has not alleged, nor does the record show, any problem with his guilty plea that would render the plea invalid. Therefore, the court finds that Wilson's voluntary and counseled plea of guilty is proof that he committed the crime. In addition, Wilson knowingly waived his right to have the government present evidence before a jury, including physical evidence such as the crack cocaine. See Guilty Plea Transcript at 22. He cannot now obtain relief by claiming that the crack cocaine did not exist. Wilson's claim has no merit.

### 2. Illegality of Sentence Increase.

Wilson also alleges that his sentence is improper because it was based on facts that were not mentioned in the indictment nor found by the jury. See Record

Document 63. He claims that neither the court nor the probation officer who wrote the presentence report can be finders of facts that increase a defendant's punishment. See id. He further states that he seeks relief in "in equity,"[3] and that "in equity," the maxims of law do not allow judges to answer questions of fact. See id.

The United States alleges that this argument was raised on direct appeal and therefore cannot be considered here. See Record Document 65. However, the claims rejected by the Fifth Circuit are not the exact claims raised by Wilson in the instant motion. Rather, the Fifth Circuit rejected Wilson's assertion that his sentence was illegal based on Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), because, the court found, the record did not indicate that a different result would have been reached under an advisory sentencing scheme. The Fifth Circuit also rejected Wilson's claim that the admission of his co-defendant's statements at sentencing violated his Sixth Amendment right to confrontation under Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), citing United States v. Navarro, 169 F.3d 228, 236 (5th Cir. 1999), which held that "there is no Confrontation Clause right at sentencing." Contrary to the government's argument, these findings do not address

---

[3]As discussed above, Wilson has provided no authority for his allegations that the court should grant relief "in equity." Therefore, this claim is analyzed under section 2255.

11

the exact claim Wilson makes here: that neither the court nor the probation officer can be factfinders at sentencing. In his appeal to the Fifth Circuit, Wilson objected to the testimony the court considered in finding facts, whereas here Wilson is objecting to the judge's ability to engage in fact-finding altogether.

In United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005), the Fifth Circuit held that judicial fact-finding is permissible in the sentencing process. The court explained that, "[t]he Guideline range should be determined in the same manner as before Booker/Fanfan." Id. (citing United States v. Booker, 543 U.S. 220, 233, 259, 125 S. Ct. 738, 750, 764 (2005)). Indeed, "Booker contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing." Mares, 402 F.3d at 519. Accordingly, it is clear that this court was free to consider the witness's testimony and find the facts relevant to sentencing, including the amount of crack cocaine Wilson distributed. Wilson's argument to the contrary is without merit.

Wilson also objects to the findings in the presentence report, claiming that it was improper for the officer who completed the report to engage in fact-finding. Wilson objected to the findings in the presentence report during the sentencing hearing as well. See Sentencing Transcript at 2. In response to this objection, the court heard the testimony of Agent Benton who interviewed Edmond and Wilson during the

investigation. Based on the testimony, the court determined the amount of drugs Wilson distributed and sentenced Wilson accordingly. Therefore, contrary to Wilson's assertions, it was the court who engaged in fact-finding, not the probation officer. As discussed above, the court has the authority to find the facts upon which a sentence is based. Therefore, this argument is also without merit.

### III. CONCLUSION

Accordingly, Wilson's "Independent Bill In Equity For Relief From Judgment" (Record Document 63) is **DENIED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 26th day of September, 2006.



JUDGE TOM STAGG